IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

YVONNE MARTINEZ, DALET
FLORES, individually and as Parent and
Next Friend of his minor child JOSE
FLORES, and DARLENE CARRASCO,

           Plaintiffs,

v.                                                                                                                    No. CIV 06-0098 BB/ACT

RUSSELL BRADFORD, SHANE
SKINNER, and JAMES L. HARLEY, in
their individual capacities,

           Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter comes before the Court for consideration of several motions for summary judgment filed by Defendants (Docs. 82, 84, 87, 92). The Court has reviewed the submissions of the parties and the relevant law. Based on the evidence presented by the parties and the arguments they have raised, Defendants' motions will be resolved as discussed below.

       This is a 42 U.S.C. Section 1983 action arising out of a case of mistaken identity. Defendant Harley is an agent with the federal Drug Enforcement Agency ("DEA") and he obtained a warrant for the arrest of a person named Yvonne Martinez. He enlisted the help of Defendants Bradford and Skinner in order to execute the arrest warrant. Bradford and Skinner are employed by the Farmington, New Mexico police department, and were members of the Region II Narcotics Task Force. They were familiar with the name of Yvonne Martinez, and knew she could no longer be located at the address provided in the arrest warrant. In order to find her current address, Bradford and Skinner requested a "utilities check" from their dispatcher. That check provided the address of Plaintiff Yvonne Martinez, and Defendants drove to that

location. Unfortunately, unbeknownst to any of the Defendants, there were two women named Yvonne Martinez living in the Farmington area, and the address to which Defendants traveled was not the residence of the Yvonne Martinez for whom they had a warrant.

When Defendants arrived at the home, neither Plaintiff Martinez nor Plaintiff Dalet Flores was present. Instead, Defendants encountered Plaintiffs Jose Flores and Darlene Carrasco, who were eleven years old and fifteen years old, respectively. Darlene is the sister of Dalet Flores and thus the aunt of Jose Flores. She told Defendant Harley that Yvonne Martinez was not in the residence. Under disputed circumstances, Harley obtained consent from Carrasco to search the residence to make sure Carrasco was telling the truth. After he had performed the search, Plaintiffs Martinez and Dalet Flores drove up in a vehicle and parked. Defendants Bradford and Harley met them before they had exited the vehicle and detained both of them. There are factual disputes over how long they were detained. There is also a dispute as to whether Dalet Flores was handcuffed during the detention; it is undisputed that Martinez was handcuffed. At some point Defendants realized they had apprehended the wrong Yvonne Martinez, and they ended the detention by removing her handcuffs and leaving the scene.

Plaintiffs filed suit, claiming that Martinez and Dalet Flores had been unconstitutionally detained and arrested; that excessive force had been used on them; that the entry into the home to search for Yvonne Martinez violated the Fourth Amendment; and that Jose Flores and Darlene Carrasco were subjected to an unreasonable seizure as well as an unreasonable entry into the home they occupied at the time of the search. Defendants have filed the following motions: (1) a motion to dismiss or for summary judgment, filed by Skinner and Harley; (2) a motion for summary judgment requesting qualified immunity, filed by Skinner; (3) a similar motion filed by Harley; and (4) a similar motion filed by Bradford. These are the motions before the Court.

**Standard of Review**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing the parties' motions, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (stating that moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.") Once the movant meets its burden, the nonmovant must identify evidence that would enable a trier of fact to find in the nonmovant's favor. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

**Discussion**

Each Defendant is in a somewhat different position procedurally or factually, or both. Therefore, their respective motions will be discussed separately.

**Defendant Shane Skinner:** Plaintiffs have not filed a response to the qualified-immunity motion filed by Skinner. Although such failure does not automatically entitle Skinner to summary judgment, it leaves the evidence he has proffered unchallenged. *See Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1194-95 (10th Cir.2002). According to his declaration, his participation in the search of the residence was limited to standing outside one door of the residence while Harley was speaking with Darlene Carrasco at the other door and subsequently entering the home to search it. [Doc. 87, Exh. 7] Furthermore, he remained near the residence when Martinez and Dalet Flores drove up, and did not participate in the detention of those two Plaintiffs. [*Id.*] Finally, he was the individual who informed Harley that Plaintiff Martinez was the "wrong" Yvonne Martinez, thus ending the detention. Given these facts, Defendant Skinner did not commit any of the constitutional violations claimed by any of the Plaintiffs, and he is

entitled to qualified immunity and summary judgment. *See, e.g., Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) (to overcome qualified-immunity defense, plaintiff must first show the defendant violated a constitutional or statutory right).

**Defendant James Harley:**  Defendant Harley has filed two different motions directed at Plaintiffs' claims. The first, which he filed jointly with Defendant Skinner, contends the applicable statute of limitations has expired on Plaintiffs' claims against him.[1]  The second is a motion for summary judgment claiming he is entitled to qualified immunity on those claims.

**a. Statute of Limitations:**  This issue arises because when Plaintiffs filed their original complaint, the only named Defendants were Defendant Bradford, "John Doe," and "Jane Doe." [Doc. 1]  Plaintiffs brought claims against the law enforcement officers who participated in the search of the residence and the subsequent detention of Martinez and Dalet Flores, but apparently knew the identity only of Defendant Bradford at the time the initial complaint was filed. Later, Plaintiffs filed a motion to amend the complaint to substitute Skinner and Harley for the John and Jane Doe defendants. Harley argues this motion was filed after the expiration of the applicable limitations period, and therefore claims he is entitled to dismissal of the claims brought against him.

It is useful to examine the following chronology of events in order to understand the issue presented. The incident giving rise to Plaintiffs' claims occurred on June 15, 2004. Plaintiffs filed their first complaint in February 2006, well within the three-year limitations period that applies to *Bivens* actions brought in New Mexico. *See Roberts v. Barreras,* 484 F.3d 1236, 1238 (10th Cir. 2007) (limitations period for *Bivens* cases is same as for § 1983 cases; in New Mexico, that period is three years). This complaint raised state-law tort claims as well as § 1983 claims brought under federal law. A few months later, in June 2006, Defendants requested a stay of the proceedings, contending that Defendants were acting as federal law enforcement officers during

---

[1]Since the Court has ruled in favor of Skinner on the merits, no discussion is necessary concerning his statute-of-limitations defense.

the events in question and that the tort claims stated in the complaint were subject to the requirements of the Federal Tort Claims Act ("FTCA"). One requirement of the FTCA is that administrative remedies be exhausted before a tort claim may be brought in district court. On June 9, 2006, this Court granted the stay requested by Defendants and this case was stayed to allow Plaintiffs to pursue their administrative remedies. On May 24, 2007, pursuant to a motion filed by Plaintiffs, the stay was lifted and this case proceeded as a *Bivens* action only.[2] At this time Defendant Bradford remained the only Defendant identified in the pleadings.

In early June, 2007, approximately a week before the three-year limitations period ostensibly expired, Defendant Bradford provided information to Plaintiffs indicating that Defendants Skinner and Harley had participated in the events giving rise to the lawsuit. Later in June, Plaintiffs asked counsel for Defendants if there would be any objection to the filing of an amended complaint substituting Skinner and Harley for the Doe Defendants. Counsel agreed to this request, but Plaintiffs did nothing until October 2, 2007, when they filed a motion asking permission to amend their complaint yet again. Defendants objected to the proposed amendment, and a hearing was held on the motion. This Court granted the motion on March 18, 2008, but specifically withheld any ruling on the statute-of-limitations question raised by Defendants.

As the above time-line establishes, Harley was not officially added as a Defendant until March 18, 2008, and no request to add him was presented to the Court until October 2, 2007. Both of these dates are outside the three-year limitations period applicable to Plaintiffs' *Bivens* claims. To avoid dismissal of their claims against Harley, Plaintiffs present two arguments. First, they contend their amended complaint adding Harley as a defendant relates back to the prior complaints filed in this case, under Federal Rule of Civil Procedure 15. Second, they maintain that a New Mexico tolling statute, NMSA § 37-1-12, applies and brings their latest amended complaint within the limitations period. The Court need not address the relation-back

---

[2] The § 1983 claims stated in the initial complaint were simply converted to *Bivens* claims, since Defendants were acting as federal agents during the time in question.

argument, as the Court finds the stay entered in this case tolled the limitations period for the time in which the stay remained in effect.[3]

It is clear that for purposes of § 1983 or *Bivens* actions, federal courts must apply not only the state's personal-injury limitations period but also any tolling doctrines provided by state law. *See Roberts v. Barreras, supra*, 484 F.3d at 1240. New Mexico has both a statutory tolling provision and a recognized equitable-tolling doctrine. *Id.* The statutory tolling provision requires tolling if "the commencement of any action, shall be stayed or prevented by injunction order or other lawful proceeding... ." NMSA § 37-1-12.[4] Plaintiffs contend the order of this Court, staying the proceedings in this case for almost a year, is an order that stayed the commencement of their action against Defendant Harley. They argue in essence that while the stay was in effect, they would not have been allowed to substitute Harley for the John Doe defendant because until the tort claims were removed from the case, exhaustion of their administrative remedies would have been required as to Harley just as it was with respect to Defendant Bradford and the Doe defendants.

Harley objects to this line of reasoning by pointing to the word "prevented" in § 37-1-12. He contends that the stay of proceedings in this case did not prevent Plaintiffs from timely filing their claims against him, because his identity was disclosed to Plaintiffs a week before the

---

[3]The Court notes, however, that Plaintiffs' relation-back argument appears to be foreclosed by Tenth Circuit precedent, despite Plaintiffs' contentions to the contrary. *See, e.g., Garrett v. Fleming*, 362 F.3d 692, 696-97 (10th Cir. 2004) (as a matter of law, substitution of named defendants for John Doe defendants, in a *Bivens* action, did not relate back under F.R.C.P. Rule 15 to earlier complaint filed by plaintiff).

[4]It appears to the Court that when this provision was enacted in the late 1800s, the Legislature intended to include a comma between "injunction" and "order" so that the sentence would make more sense grammatically as well as legally. This conclusion is bolstered by examination of an Illinois statute first enacted in the same time frame, which mandates tolling when the commencement of an action is stayed "by injunction, order of a court, or statutory prohibition..." 735 ILCS 5/13-216. Whether the New Mexico provision is intended to apply to an "injunction order" or an "injunction," "order," or other lawful proceeding, the Court believes the result would be the same.

limitations period expired in June 2007.  Defendants thus argue for a functional interpretation of § 37-1-12: if a plaintiff could have filed suit in a timely manner after the injunction, order, or other lawful proceeding was dissolved, the plaintiff cannot take advantage of the tolling provision.  That is not how the Court reads the statute.  The provision says nothing about a plaintiff's ability to timely file a lawsuit once the disability has been removed.  Instead, there is an automatic subtraction of any time during which commencement of the action was stayed **or** prevented by a court order.  Thus, it is not even necessary to examine whether as a practical matter the plaintiff was somehow prevented from filing a claim; if a stay is in effect, tolling is required.  *Cf. In re Werner*, 386 B.R. 684, 693 (N.D. Ill. 2008) (construing Illinois version of tolling provision, and pointing out that unlike equitable tolling, the statute does not require a plaintiff to demonstrate he has exercised due diligence).

      In sum, while the Defendants in this case were Bradford and the Doe Defendants, a stay was put in effect so that required administrative procedures could be pursued.  After the administrative procedures were terminated because Plaintiffs decided to forego their tort claims, the stay was removed and this case proceeded.  By operation of NMSA § 37-1-12, the time during which the case was stayed must be subtracted from the total elapsed time when computing the limitations period applicable to Plaintiffs' claims.  Doing so, the Court finds those claims were timely filed against Defendant Harley.[5]

---

[5] In reaching this result, the Court has considered Defendants' argument that Plaintiffs caused delay during the administrative process by failing to comply with rules and regulations imposed during that process.  The Court need not engage in an inquiry into Plaintiffs' conduct during the administrative proceedings, absent some showing by Defendants that undue prejudice resulted from the delay.  At this time, the only apparent prejudice caused by Plaintiffs' alleged delay has been to themselves – they were not allowed to pursue this lawsuit during the pendency of the administrative proceedings.  Furthermore, the Court notes the result reached in this case is supported by the *Roberts* case, in which the Tenth Circuit pointed out that every circuit addressing the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 and *Bivens* claims.  484 F.3d at 1238.

**b. Merits:** Harley filed a motion for summary judgment requesting qualified immunity on all claims raised by Plaintiffs. In the response brief, Plaintiffs stated that they only oppose summary judgment with respect to two causes of action: (1) the claims of Jose Flores and Darlene Carrasco for unconstitutional seizure and search of their persons; and (2) the claim of Dalet Flores and Yvonne Martinez that Defendant Harley unreasonably entered and searched their home. Given Plaintiffs' concession, summary judgment will be granted to Harley on all other claims brought against him by Plaintiffs.

**1. Unlawful Entry.** As to this claim, Plaintiffs' briefing of the issue is puzzling, to say the least. Harley's opening brief contains a section entitled "Claim of Unlawful Entry into Plaintiff Yvonne Martinez's Residence" and discussing the issue of consent. In response, Plaintiffs for some reason contend that Harley "does not seek summary judgment on the claims that alleged that he wrongfully entered Plaintiff's home." [Doc. 97, p. 7] They do add that Harley did not have probable cause or consent and therefore could not enter the residence. Furthermore, in a prior section of the brief they argue that Harley did not request permission to enter the residence, but threatened Darlene Carrasco with criminal prosecution to force her to consent, raising the issue of coercion. It is clear, therefore, that the validity of Darlene Carrasco's consent is at issue in this case, no matter how poorly Plaintiffs have briefed it.[6]

In exercising its duty to carefully examine Defendant Harley's potential entitlement to summary judgment, the Court notes that Harley has tangentially raised an important issue in this case, the question of whether Darlene had any authority at all to consent to a search of the residence. Harley has raised the issue as one of capacity, pointing out that the Tenth Circuit has

---

[6]The Court also notes that even if Plaintiffs had completely failed to respond to Harley's arguments, under Tenth Circuit precedent the Court has a duty to examine Harley's evidentiary showing to determine whether he is entitled to summary judgment. *See, e.g., Reed v. Nellcor Puritan Bennett*, *supra*, 312 F.3d at 1194-95 ("If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law.")

explicitly held that a minor child can give consent to search a hotel room occupied by her father and herself. *See U.S. v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1231 (10th Cir. 1998) (minority does not, standing alone, bar a finding of actual authority to grant consent to a third party to enter). However, the facts presented so far in this case, as well as the law discussed in *Gutierrez-Hermosillo* and other Tenth Circuit cases, raise a significant factual issue that is related to the question of capacity but is not identical to it. This issue is the question of whether Darlene possessed either actual authority or apparent authority to allow third parties to enter and search the residence.

As the Tenth Circuit explained in *Gutierrez-Hermosillo*, a third party such as Darlene, who is not the object of the search, may effectively give consent to a search of "common premises" if that third party has either actual authority or apparent authority to consent to a search. 142 F.3d at 1230. The test for determining whether actual authority exists is whether the third party has mutual use of the property, or joint access or control of the property for most purposes. *Id.* Similarly, the test for determining whether apparent authority exists is whether the officer entering the residence reasonably believed that the third party had mutual use of the property, or control over the property for most purposes. *See U.S. v. Cos*, 498 F.3d 1115, 1128 (10th Cir. 2007). There is a rebuttable presumption of actual authority if the third party granting consent to search is a parent, child, or spouse of the object of the search. *See id.*, 498 F.3d at 1125. Significantly, if a law enforcement officer is faced with ambiguous facts with regard to the authority to consent, the officer is under a duty to inquire further and may not simply assume such authority exists. *See id.,* 498 F.3d at 1128-29; *U.S. v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004); *U.S. v. Salinas-Cano*, 959 F.2d 861, 864 (10th Cir. 1992). The facts of this case, as they have been presented in the summary-judgment pleadings, must be examined to determine whether Darlene had either actual authority or apparent authority to consent to Harley's entry into the residence and subsequent search.

At this point it is undisputed that Darlene was not the owner of the residence, a tenant, or a long-term occupant. She was the fifteen-year-old sister of Dalet Flores, was visiting the Farmington area for only two weeks to visit family and stay with her Aunt Blanca, and was staying overnight at her older brother's residence for only one night. [Doc. 92, Exh. D, p. 24] These undisputed facts preclude any finding that Darlene had actual authority to allow entry into the residence. She was not a child or spouse of either Dalet Flores or Yvonne Martinez, so no presumption of actual authority exists. *See Cos, supra*. Furthermore, her status as an overnight guest, without more, cannot support a finding that she had mutual access to the residence or joint control over it for most purposes. At this time, therefore, the Court finds Defendant Harley has failed to establish that Darlene had actual authority to consent to his search of the residence.[7]

As to the question of apparent authority, the Court also finds there are genuine material facts in dispute precluding a grant of summary judgment to Harley. When Harley came to the door of the residence, he was met by a fifteen-year-old girl and a younger boy. There is no evidence that he knew what Darlene's relationship was to Yvonne Martinez, the object of the arrest warrant. There is also no evidence as to whether he inquired about Darlene's status, her control over the residence, or whether she was staying at the residence for a short period of time or on a long-term basis. The mere fact that she was at the residence is not sufficient to allow a finding of apparent authority. *See, e.g., Cos, supra*, 498 F.3d at 1129 (even if accompanied by young children, an adult woman's mere presence at the residence would not allow an officer of reasonable caution to believe the woman had mutual use of the property or joint control over it). The Court notes this case differs significantly from the *Gutierrez-Hermosillo* case, because in that case the officer obtaining consent knew the minor child answering the hotel-room door was

---

[7] In fact, it appears highly unlikely that a fifteen-year-old overnight guest such as Darlene did have actual authority over the premises. However, the Court can conceive of some circumstances under which such a situation might exist, and will therefore allow Harley to attempt to establish the existence of such actual authority at trial.

the suspect's daughter, and knew she had been traveling with her father. In this case, on the other hand, at least on the basis of the facts presented to the Court, Harley knew nothing at all about Darlene's status when he obtained her consent to enter the residence. Thus, there is at least a factual issue about whether he performed the necessary follow-up inquiries concerning authority when he was confronted with ambiguous facts. Furthermore, the law concerning authority, apparent authority, and an officer's duty to inquire further has been clearly established in the Tenth Circuit since at least 1992, when the *Salinas-Cano* opinion was issued. *See Salinas-Cano, supra,* 959 F.2d at 864. For this reason, Harley's request for qualified immunity and summary judgment as to the illegal-entry claim must be denied.[8]

**2. Unconstitutional Search and Seizure of Darlene and Jose.** Plaintiffs maintain that Darlene and Jose, the two minors at home when Defendants first came to the residence, were patted down and arrested in violation of the Constitution. Viewed in the light most favorable to Plaintiffs, the facts supporting this claim are as follows: (1) Darlene testified that when she and Jose went to open the door, she saw a masked man holding a gun and pointing it into the house [Doc. 92, Exh. D, p. 36]; (2) Darlene does not remember whether she was patted down during the encounter, but she was not made to get on the floor [*Id.* p. 48]; (3) Jose testified that after he and Darlene answered the door, the officers barged in and told him and Darlene to get on the ground and "patted us down pretty quick" [Doc. 92, Exh. E, p. 26]; (4) while Darlene and Jose were approaching the door, one of the officers was holding the barrel of his gun and knocking on the door with the handle of the gun [*Id.* p. 27]; (5) the officer without a mask on (Defendant Harley, according to Defendant Bradford's deposition) came into the house, had his gun pointed at Jose's chest, and pushed Jose "kind of down to the ground" [*Id.* pp. 29-30; Exh. F, p. 24]. Therefore, although Jose's recollection of events differs somewhat from Darlene's, for purposes of this motion the Court accepts that Harley pointed his gun at Jose's chest as he entered the residence

---

[8]Since summary judgment will be denied on the illegal-entry claim, it is not necessary at this point to address the question of the voluntariness of Darlene's consent.

and pushed Jose to the ground, and that although Darlene did not see Harley holding a gun, she did see one of the masked officers point his gun into the residence.[9]  There is no admissible evidence, however, indicating that Darlene was made to get on the ground – although Jose testified that both he and Darlene were on the ground, he also testified that he could not see her. [*Id.*, Exh E, p. 30]  Jose's lack of personal knowledge leaves Darlene's denial that she was ever on the floor as the only admissible evidence of what happened to her during the encounter.  By contrast, however, Jose's statement that both he and Darlene were patted down, coupled with her failure to remember whether that occurred, must be accepted as evidence that both he and Darlene were patted down by Harley.[10]

The next step is to determine whether these facts are sufficient to establish a constitutional violation and, if so, to overcome Harley's qualified-immunity defense.  It is important to keep in mind as a starting point the fact that, viewing the evidence in the light most favorable to Plaintiffs, Harley did not have a right to be inside the residence.  In other words, if Darlene did not have actual or apparent authority to consent to Harley's entry into the residence, he did not have a legal basis for stepping inside the residence and searching it.[11]  In addition,

---

[9]The Court notes Defendants' suggestion that Jose may have been confusing this incident with other encounters he experienced that summer when law enforcement personnel were called to the residence.  However, at this stage of the proceedings the Court is required to accept the evidence proffered by Jose as true, and cannot speculate in the manner suggested by Defendants. Furthermore, although all Defendants deny that any one of them was holding a firearm as they approached the house and entered it, and Harley denies touching either of the minors at any time, the Court cannot credit that evidence over Darlene's and Jose's version of the events.

[10]It is undisputed that Harley was the officer who fully entered the residence.  Therefore, if a pat-down did occur he is the officer who would have performed it.

[11]The arrest warrant for Yvonne Martinez, standing alone, was not sufficient to allow such entry.  In the Tenth Circuit an arrest warrant allows an officer to enter a suspect's home only if the officer also has a reasonable belief that the subject of the warrant is in the home at the time of entry.  *U.S. McKerrell*, 491 F.3d 1221, 1227 (10th Cir. 2007).  In this case, Darlene had informed Harley that Yvonne was not inside, and Harley has pointed to no evidence that might have created a reasonable belief the statement was not true.

12

long-standing Supreme Court and Tenth Circuit precedent establishes that a pat-down or frisk of a person is a "seizure" and "search" for purposes of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968); *U.S. v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003). The question that must be answered, therefore, is whether Harley's seizure and search of Darlene and Jose was constitutionally acceptable, despite the fact that for purposes of this opinion he should not have been inside the residence.

It is clear that if Harley had obtained valid consent to search the residence in an effort to execute the arrest warrant, he would have had the right to reasonably detain Darlene and Jose, in order to protect his own safety as well as the safety of the other officers present and Darlene and Jose. *See, e.g., Walker v. City of Orem*, 451 F.3d 1139, 1149 (10th Cir. 2007) (under Supreme Court case of *Michigan v. Summers*, 452 U.S. 692, 705 (1981), officers executing a valid search warrant have authority to detain the occupants of the premises while the search is being conducted); *see also U.S. v. Enslin*, 327 F.3d 788, 797 n. 32 (9th Cir. 2003) (pointing out that although *Summers* was decided in context of execution of a search warrant, the same principles apply to execution of an arrest warrant). The *Summers* doctrine, however, applies only where the officers are executing a valid warrant in a valid manner; if the officers are engaged in an illegal search, detention of the occupants of a residence is not permissible. *See Jacobs v. City of Chicago*, 215 F.3d 758, 772 (7th Cir. 2000) (where search is illegal, the justification for using the search as the foundation for a seizure disappears); *Marks v. Clarke*, 102 F.3d 1012, 1032 (9th Cir. 1996) (*Summers* does not authorize detaining occupants in furtherance of an illegal search); *cf. Callahan v. Millard County*, 494 F.3d 891, 898 (10th Cir. 2007) ("This Circuit has also long adopted the view that warrantless entries into a home are per se unreasonable unless they satisfy the established exceptions."). In this case, therefore, there is a genuine issue of material fact as to whether the alleged seizure and search of Darlene and Jose, if it did occur, was invalid from the outset, due to Harley's lack of any legal basis to be inside the residence. Again, the law in this

area is clearly established and the facts are in dispute; accordingly, Harley's motion for summary judgment must be denied.[12]

**Defendant Russell Bradford:** Defendant Bradford has moved for summary judgment on the merits on the basis of qualified immunity. In response, Plaintiffs concede that Bradford did not enter the residence or participate in the alleged seizure of Darlene and Jose. They also concede that he had no part in detaining Yvonne Martinez. Therefore, they oppose the motion only as to Count I, and only as that Count concerns the detention of Plaintiff Dalet Flores. Therefore, that is the only issue addressed in this opinion.

Plaintiffs maintain that Dalet's detention amounted to an arrest that was not supported by probable cause. In the alternative, they argue that even if the detention constituted an investigative detention, such a detention must be supported by reasonable suspicion of criminal activity, which was not present in this case. The facts relevant to these contentions, viewed in the light most favorable to Plaintiffs, are as follows: (1) as noted above, Dalet drove up in the same vehicle as the "wrong" Yvonne Martinez while Defendants were present at the residence; (2) Dalet was in the driver's seat, and Defendants Harley and Bradford (still wearing a mask) approached the vehicle [Doc. 84, Exh. C, p. 38; Exh. F, pp. 42-43]; (3) Bradford recognized Dalet as the target of a separate criminal investigation involving sales of drugs, and saw Dalet appear to reach under the seat as the officers approached the vehicle [*Id.* Exh. F, pp. 43, 44, 49]; (4) Bradford opened the driver's side door and ordered Dalet at gunpoint to place his hands on the steering wheel, and then to exit the vehicle [*Id.* pp. 45, 47]; (5) after Dalet was out of the

---

[12]Due to this resolution of the motion, the Court need not address the many factual disputes that are present, such as whether any seizure of search occurred at all, or whether anyone held Jose at gunpoint and if so, for what period of time. Those matters will of course be relevant at trial. The Court also need not address Plaintiffs' characterization of their detentions as "arrests" rather than detentions equivalent to an investigatory detention, and as a result need not decide whether probable cause was necessary to support the alleged detentions.

vehicle, Bradford patted him down and then handcuffed him [*Id.* p. 48; Exh. C, p. 39];[13] and (6) Dalet remained handcuffed for approximately fifteen minutes, and then the cuffs were removed after Defendants discovered their information had led them to the "wrong" Yvonne Martinez [*Id.* Exh. C, p. 42]. At that point the detention ended and Defendants left the premises.

      Plaintiffs argue, in essence, that Dalet was not suspected of any criminal wrongdoing and therefore there was no reasonable suspicion to detain him at all, and certainly no probable cause to arrest him. Certainly as a general matter Plaintiffs' principles of Fourth Amendment law are accurate; an investigative detention or arrest must normally be supported by reasonable suspicion or probable cause, respectively. However, exceptions to this rule exist, and the Court must determine whether such an exception applies in this case. For example, as the Court has already pointed out, when officers are executing a valid warrant in a valid manner, the officers may detain even innocent bystanders who are occupying the premises at the time. *See, e.g., Michigan v. Summers, supra*. A similar exception applies, at least in the Tenth Circuit, when officers are executing a valid arrest warrant or otherwise making a valid arrest -- the officers may detain individuals who are in the immediate vicinity of the arrest, in the interest of officer safety. *See U.S. v. Maddox*, 388 F.3d 1356, 1362-63 (10th Cir. 2004) (where arrest occurs inside a home, officers may place other individuals in the home in "protective detention"; other individuals outside the home but within the perimeters of the "arrest scene" may be detained only if there exist specific facts giving rise to a reasonable belief that the individuals may pose a danger to the officers); *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (bystander at scene of arrest was handcuffed and detained by police for a short period of time; this detention

---

[13]It should be noted that Bradford denies that Dalet was ever handcuffed, and also denies that he pointed his firearm at Dalet, claiming it remained in its holster at all times during the encounter. However, for purposes of summary judgment the Court must accept Dalet's version of the events rather than Bradford's.

did not violate the Fourth Amendment, where officers did not expect bystander to be present and were unaware of her relationship to arrestee).

It is difficult to distinguish the facts of this case from the facts in *Maddox* or *Thompson*. As in *Maddox*, the arrest warrant issued in this case was for an individual suspected of narcotics trafficking, an activity characterized by the Tenth Circuit as inherently dangerous. Furthermore, in *Maddox*, as in this case, the officer saw the detainee reach under the seat of the vehicle prior to exiting the vehicle. As was the case in *Thompson,* Dalet was in the immediate vicinity of the arrest, and Bradford was not aware what his relationship might be with the arrestee. In addition, Dalet was handcuffed for fifteen minutes and the detainee in *Thompson* was handcuffed for "a short period of time." Finally, in this case Bradford recognized Dalet as the subject of a separate investigation into narcotics trafficking, giving Bradford more reason to be careful in the interest of officer safety than was present in *Thompson* or *Maddox*, where the identities of the detainees were not known. Given the similarities between this case and the *Maddox* and *Thompson* cases, the Court cannot say there was clearly established law informing Bradford that he was violating the Constitution by detaining Dalet and handcuffing him for fifteen minutes while the arrest of Yvonne Martinez, albeit the "wrong" one, was proceeding. Therefore, summary judgment will be granted to Bradford on the basis of qualified immunity, and the Court need not determine whether a violation of the Fourth Amendment occurred or not under the circumstances of this case. *See Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (officer is entitled to qualified immunity if his actions did not violate clearly established law).

**Conclusion**

Based on the foregoing, Defendant Skinner's motion for summary judgment will be granted and he will be dismissed from the case; Defendant Bradford's motion will also be granted and he will be dismissed from the case; and Defendant Harley's motions will be granted in part and denied in part. The only claims remaining to be tried are the claim for unlawful entry

and search of the residence, and the claim for unlawful search and seizure of Plaintiffs Darlene Carrasco and Jose Flores.

**ORDER**

A memorandum opinion having been entered this date, it is hereby ORDERED that the motion for summary judgment (Doc. 84) filed by Defendant Bradford be, and hereby is, GRANTED; the motion for summary judgment (Doc. 87) filed by Defendant Skinner be, and hereby is, GRANTED; the motion for summary judgment (Doc. 82) filed by Defendants Harley and Skinner be, and hereby is, DENIED; and the motion for summary judgment (Doc. 92) filed by Defendant Harley be, and hereby is, GRANTED in part and DENIED in part.

Dated this 5th day of January, 2009.

_____
BRUCE D. BLACK
United States District Judge